# IN THE UNITED STATES DISTRICT COURT OF THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LOUIS ANTHONY GALLO, Administrator of** the Estate of Anthony Edward Gallo, deceased, | CA 19-1260 <br> Civil Action No. 2:05-mc-2025 |
| **Plaintiff,** | **TYPE OF PLEADING:** <br> COMPLAINT. |
| | **NATURE OF COMPLAINT:** <br> Section 1983 Civil Rights Action <br> Excessive/Deadly Force |
| VS. | **FILED ON BEHALF OF:** <br> The Plaintiff |
| | **COUNSEL OF RECORD:** |
| **CHAD WEAVER, in his Individual Capacity; JOSEPH RUGGERY, DALE BROWN, STEVEN DRISCOLL, and JOHN KEAN** all in their Individual Capacities; **JOHN DOE Captain/Commanding Officer of Troop B; JOHN DOE Criminal Investigation Section Commander; JOHN DOE Patrol Section Commander; and JOHN DOE Staff Services Section Commander, JOHN DOE Sergeant and JOHN DOE Corporal, all in their Individual Capacities.** | Noah Geary, Esquire <br> Suite 225 <br> Washington Trust Building <br> Washington, PA 15301 <br><br> 724-222-3788 <br> PA ID 78382 |
| | September 30, 2019 |

**JURY TRIAL DEMANDED.**

1

## COMPLAINT.

**AND NOW COMES** the Plaintiff, Louis Anthony Gallo, Administrator of the Estate of Anthony Edward Gallo, deceased, through his lawyer, Noah Geary, Esquire and in support, avers as follows:

## THE PARTIES.

1. The Plaintiff is the Administrator of the Estate of Anthony Edward Gallo, deceased. Letters of Administration were issued by the Register of Wills of Washington County Court of Common Pleas on May 16, 2019 appointing him as the personal representative of the Estate Of Anthony Edward Gallo at Docket Number 63-19-639.

2. He is the Father of Anthony Edward Gallo.

3. Defendant Chad Weaver, in his Individual Capacity, is an adult individual who at all times material was acting under color of state law in his capacity as Trooper for the Pennsylvania State Police. His business address is Troop B Washington, 150 State Route 519, Eighty Four, PA 15330. This is located within the Western District.

4. Defendant Joseph Ruggery, in his Individual Capacity, is an adult individual who was at all times material acting under color of state law in his capacity as Captain/Commanding Officer of the Troop B Command Staff for the Troop B Barracks for the Pennsylvania State Police. His business address is Troop B Washington, 150 State Route 519, Eighty Four, PA 15330. This is located within the Western District.

5. Defendant Dale Brown, in his Individual Capacity, is an adult individual who at all times relevant acted under color of law in his capacity as a Lieutenant/the Criminal Investigation Section Commander for the Troop B Barracks of the Pennsylvania State Police. His business

address is Troop B Washington, 150 State Route 519, Eighty Four, PA 15330. This is located within the Western District.

6.      Defendant Steven Driscoll, in his Individual Capacity, is an adult Individual who at all times relevant acted under color of state law in his capacity as a Lieutenant/Patrol Section Commander of the Pennsylvania State Police. His business address is Troop B Washington, 150 State Route 519, Eighty Four, PA 15330. This is located within the Western District.

7.      Defendant John Kean, in his Individual Capacity, is an adult Individual who at all times relevant acted under color of state law in his capacity as a Lieutenant/Staff Services Section Commander of the Pennsylvania State Police. His business address is Troop B Washington, 150 State Route 519, Eighty Four, PA 15330. This is located within the Western District.

8.      Defendant John Doe #1 in his Individual Capacity, is an adult Individual who at all times relevant acted under color of state law in his capacity as a Captain/Commanding Officer of the Troop B Command Staff for the Troop B Barracks for the Pennsylvania State Police. His business address is Troop B Washington, 150 State Route 519, Eighty Four, PA 15330. This is located within the Western District.

9.      Defendant John Doe #2 in his Individual Capacity, is an adult Individual who at all times relevant acted under color of state law in his capacity as a Lieutenant/the Criminal Investigation Section Commander for the Troop B Barracks of the Pennsylvania State Police. His business address is Troop B Washington, 150 State Route 519, Eighty Four, PA 15330. This is located within the Western District.

10.     Defendant John Doe #3 in his Individual Capacity, is an adult Individual who at all times relevant acted under color of state law in his capacity as a Lieutenant/Patrol Section Commander of the Pennsylvania State Police. His business address is Troop B Washington, 150 State Route 519, Eighty Four, PA 15330. This is located within the Western District.

11.     Defendant John Doe #4 in his Individual Capacity, is an adult Individual who at all times relevant acted under color of state law in his capacity as a Lieutenant/Staff Services Section Commander of the Pennsylvania State Police. His business address is Troop B Washington, 150 State Route 519, Eighty Four, PA 15330. This is located within the Western District.

12.     Defendant John Doe Corporal, in his Individual Capacity, is an adult Individual who at all times relevant acted under color of state law in his capacity as a Lieutenant/Staff Services Section Commander of the Pennsylvania State Police. His business address is Troop B Washington, 150 State Route 519, Eighty Four, PA 15330. This is located within the Western District.

13.     Defendant John Doe Sergeant, in his Individual Capacity, is an adult Individual who at all times relevant acted under color of state law in his capacity as a Lieutenant/Staff Services Section Commander of the Pennsylvania State Police. His business address is Troop B Washington, 150 State Route 519, Eighty Four, PA 15330. This is located within the Western District.

## JURISDICTION AND VENUE.

14. This action arises under the Constitution of the United States of America, particularly the Fourth Amendment to the Constitution of the United States of America, and under the laws of the United States of America, particularly the Civil Rights Act of 1964, Title 42 U.S.C.§ 1983.

15. The jurisdiction of this court is invoked under the provisions of Title 42 Section 1331, Federal Question.

16. Venue is proper in this District because the Defendants' unlawful and unconstitutional acts giving rise to the claims herein occurred in this District, specifically in Canton Township, Washington County.

Statement of the Claim.

17. The above paragraphs are incorporated herein as though set forth fully.

18. On or about October 1, 2017, the Plaintiff's deceased, Anthony Gallo, age 34, was at home with his family in Canton Township, Washington County, Pennsylvania, which is within the Western District.

19. Gallo had been acting strangely -but not violently- the day in question and for several weeks prior. This was the result of Gallo being a passenger in a serious head-on car collision several months prior wherein his head impacted with the windshield.

20. His mother, Betty Gray, decided to call 911 as a mental health call, for help.

21. Gallo had a small paring knife, but had threatened no one with it.

22. He was in the Trailer, alone, when the Defendant and other PSP Troopers and Law Enforcement arrived on scene.

23. Gallo's mother, who had called 911, and his other relatives were outside their Trailer when Trooper Weaver arrived on scene.

24. Trooper Weaver and his partner, Trooper Matthew Shaffer, both exited their units armed with AR-15 Assault Rifles.

25. At the sight of the AR-15 Rifles, Gallo's mother immediately told them that she had placed the call, did not feel that she was in danger, and stated that she thought the Assault Rifles were unnecessary.

26. The Troopers told her to "shut the fuck up".

27. The Troopers asked her if anyone else was in the trailer.

28. She told them no, which was accurate.

29. Defendant Weaver and Trooper Shaffer entered the trailer.

30. Moments after Weaver and Shaffer entered the Trailer, a burst of gunfire was heard from outside.

31. Moments thereafter, a second burst of gunfire was heard.

32. Without any provocation by Gallo, Defendant Weaver, only moments after entering the Trailer, shot Gallo with a burst of rifle fire, 4-5 shots to the torso.

33. This caused Gallo to fall to the ground.

34. Moments later, Weaver shot Gallo, again, with a second burst of fire, 4-5 more shots, while Gallo was still laying on the floor of the Trailer. It is believed that Weaver shot Gallo 10 times.

35. Trooper Weaver shot Gallo to death after being on scene a total of only 1 minute, 22 seconds.

36. At no time did Anthony Gallo threaten to use the knife on either Trooper, or anyone else.

37. At no time upon the Troopers entering the Trailer did Gallo threaten violence of any kind to either Trooper or anyone else.

38. At no time did Gallo gesture with the knife towards the Troopers.

39. At no time was Gallo verbally aggressive towards Weaver or Shaffer.

40. At no time did Gallo make a movement towards either Trooper or advance towards them.

41. No one else was present in the Trailer other than Gallo and the two Troopers; thus no other citizen was at risk of being harmed by Gallo.

42. The shooting death of Anthony Gallo by Defendant Weaver was totally unnecessary.

43. Defendant Weaver used unreasonable, excessive, deadly force by shooting Gallo repeatedly and killing him.

44. Weaver's use of force was objectively unreasonable.

45. It was objectively unreasonable for, inter alia, the following reasons:

   a. it was the reckless behavior of Defendants Weaver and Shaffer which unreasonably created the need to use force; specifically, Weaver and Shaffer unnecessarily armed themselves and stormed the trailer with AR-15 Assault Rifles;

   b. Weaver initiated coming within feet of Gallo and then justified shooting Gallo by claiming that the 21 foot principal justified Weaver's use of force, specifically, that Gallo was within several feet of Weaver yet it was Weaver who approached Gallo and kept advancing toward Gallo, thus creating the situation wherein Gallo was only a few feet from Weaver;

   b. Gallo posed no significant nor immediate threat of harm to the safety of Weaver or Shaffer;

   c. no probable cause nor reasonable suspicion existed to establish that Gallo posed a threat of harm to any citizen at the scene; nor in the trailer, because only Weaver, Shaffer and Gallo were in the Trailer;

   d. numerous clear, reasonable, less intrusive alternatives to Weaver's use of deadly force were available and never attempted, including but not limited to simply talking to Gallo to de-escalate the situation and find out what was troubling him; by permitting mental health personnel who were either on scene or in route to talk Gallo into giving them the paring knife; use of a Taser, bean-bag gun or other similar tool; AND

  e. the force used was excessive in relation to the danger Gallo posed if he had just been left unattended.

46. Instead of attempting to utilize any of the numerous less-intrusive alternatives to de-escalate the situation which were available, Defendant Weaver and Shaffer did everything to escalate the situation.

**COUNT I.**
**THE PLAINTIFF VS. DEFENDANT WEAVER: USE OF UNREASONABLE DEADLY/EXCESSIVE FORCE IN VIOLATION OF THE 4TH AMENDMENT TO THE UNITED STATES CONSTITUTION; SECTION 1983 CIVIL RIGHTS VIOLATION.**

47. The above paragraphs are incorporated by reference as though set forth fully.

48. As detailed above, Defendant Weaver used unlawful, unreasonable, excessive, deadly force in shooting Gallo repeatedly and to death.

49. Weaver's use of deadly force was objectively unreasonable.

50. As a direct and proximate result of Weaver's unlawful use of excessive force, the Plaintiff has sustained the following losses and harms:

  (a) Gallo's pain and suffering experienced while being unnecessarily and unlawfully shot repeatedly and to death at age 34;

  (b) Gallo's anxiety, fear, terror and dread immediately prior to and while being shot repeatedly and to death;

  (c) the loss of his life;

  (d) his companionship, comfort, guidance and services to his minor Son, Paul;

  (e) the loss of the enjoyment of his life;

  (f) Gallo's total estimated future earnings less his estimated cost of personal maintenance;

  (g) his lost earnings capacity;

  (h) his loss of retirement and Social Security income;

      (i)      other financial losses suffered as a result of his death;

      (j)      the funeral expenses of Gallo, including but not limited to burial and funeral luncheon;

      (k)      the expenses of administration related to Gallo's tragic and unnecessary death; and

      (j)      any/all other damages to which the Plaintiff may be entitled, whether legal or equitable.

51. Accordingly, Defendant Weaver is liable to the Plaintiff for his unlawful use of deadly force.

52. Additionally, Defendant Weaver acted with reckless indifference to Gallo's federally-protected constitutional right to be free from an unlawful seizure of his person by using excessive force and specifically by shooting him repeatedly and killing him unnecessarily.

53. The Plaintiff therefore demands punitive damage against Defendant Weaver.

54. Defendant Weaver is not entitled to qualified immunity for the many reasons set forth above and because, inter alia, shooting Gallo repeatedly and to death when Gallo at no time posed a significant or immediate threat of harm to Weaver or Trooper Shaffer was objectively unreasonable.

55. Further, no reasonable Trooper in Weaver's shoes would have believed that he was justified in shooting and killing Gallo when it was Weaver who initiated coming into such close proximity to Gallo that Weaver felt justified, under the 21 foot principle, to shoot Gallo; furthermore, and inter alia, any reasonable police officer would have first utilized the many less-intrusive methods which were readily available but never attempted by Weaver.

     **WHEREFORE,** the Plaintiff demands judgment against Defendant Weaver jointly, severally and individually in an amount to be determined by a jury after a trial by jury,

compensatory damages, punitive damages, interest, costs, attorney fees and any/all other relief as this Honorable Court may deem appropriate, whether legal or equitable.

**COUNT II.**
**THE PLAINTIFF VS. ALL DEFENDANTS OTHER THAN WEAVER: SUPERVISORY LIABILITY UNDER SECTION 1983 FOR DELIBERATE INDIFFERENCE TO THE CONSITUTIONAL RIGHTS OF ANTHONY GALLO POSED BY DEFENDANT WEAVER.**

56. The foregoing paragraphs are hereby incorporated herein as though set forth fully.

57. At all times material, these Defendants were supervisors of Defendant Weaver.

58. As such, each was directly and personally involved in and responsible for the supervising of Defendant Weaver.

59. It is believed and therefore averred that Defendant Weaver had been in the Military and served in Combat. As a result, he had severe PTSD and demonstrated behaviors and tendencies that made it unsuitable for him to be in a position/post wherein he would encounter potentially volatile situations.

60. Therefore, these supervisory Defendants should not have scheduled Weaver in a post such as the one he was working on the day in question wherein he would deal with potentially violent incidents like this one.

61. Therefore, these nine supervisory Defendants exhibited deliberate indifference to the constitutional rights of Gallo, i.e., they were on notice due to Weaver's psychological/psychiatric history and behaviors/tendencies that Weaver was more likely than the typical Trooper to use excessive force. As such, these Defendants are liable to the Plaintiff under the theory of supervisory liability.

62. Separate from the above, these Defendants were responsible for the training of Weaver regarding use of force.

63.     These Defendants failed to provide proper and sufficient 'use of force' training to Weaver. It was this failure which was the cause of Weaver's use of excessive force on the day in question. Specifically, the Defendants failed to teach/train Weaver that it was unlawful/unreasonable for him to initiate coming within a few feet of a suspect, use force, and then claim that because he was within less than 21 feet of the suspect, that his use of force was reasonable. As to all aspects of use of force training, including but not limited to the 21 foot principle and the concept of how close to get to an armed suspect were deficient and improper.

64.     This failure to train by these Defendants constituted exhibited deliberate indifference to the constitutional rights of Gallo, i.e., in light of the improper training, these supervisory Defendants knew and/or should have known that citizens such as Gallo were at risk of Weaver's use of excessive force. As such, these Defendants are liable to the Plaintiff under the theory of supervisory liability.

65.     Separate from the above, it is further believed and therefore averred that Defendant Weaver engaged in prior instances of the use of excessive force.

66.     In response, these supervisory Defendants failed to adequately and/or properly discipline Defendant Weaver for these prior uses of excessive force.

67.     They therefore acquiesced in his use of excessive, unlawful force.

68.     This acquiescence by these Defendants led Weaver to believe that it was acceptable to use excessive force and thus was the cause of his use of excessive force on the day in question.

69.     As a direct result of these Defendants' failure to supervise, failure to train, and failure to place Weaver in a proper job position/post, Plaintiff has sustained all of the injuries, losses and damages as set forth elsewhere in this Complaint.

   **WHEREFORE,** the Plaintiff demands judgment against the John Doe Defendants

jointly, severally and individually in an amount to be determined by a jury after a trial by jury, compensatory damages, punitive damages, interest, costs, attorney fees and any/all other relief as this Honorable Court may deem appropriate, whether legal or equitable.

### COUNT III.  SURVIVAL ACTION.
### PLAINTIFF vs. ALL DEFENDANTS.

70. The foregoing paragraphs are incorporated by reference as though set forth fully.

71. Plaintiff brings this Survival Action under 20 Pa. Cons. Stat. Ann. § 3373 and 42 Pa. Cons. Stat. Ann § 8302.

72. As a direct and proximate result of Weaver's use of unlawful, deadly force, decedent suffered and the Defendants are liable to Plaintiff for the following damages:

   a. decedent's pain and suffering between the time of his injuries and the time of death;
   b. decedent's total estimated future earnings less his estimated cost of personal maintenance;
   c. his companionship, comfort, guidance, tutelage and services to his minor Son, Paul;
   d. the loss of the enjoyment of his life;
   e. pecuniary loss of services to his minor son;
   e. lost earnings capacity;
   f. decedent's loss of retirement and Social Security income;
   g. decedent's other financial losses suffered as a result of his death; and
   h. decedent's loss of the enjoyment of life; and
   i. any/all other damages to which the Plaintiff may be entitled to, whether legal or equitable, in a Survival Action.

73. Further, Defendant Weaver showed reckless indifference to the federally-protected rights of Gallo, and the Plaintiff therefore demands punitive damages.

   **WHEREFORE**, the Plaintiffs demand judgment against these Defendants, jointly, severally, and individually in an amount to be determined by a jury after a trial by jury, compensatory damages, punitive damages, interest, attorney fees and any/all other relief as this Court may deem appropriate, whether legal or equitable.

## COUNT IV.
## WRONGFUL DEATH ACTION:
## PLAINTIFF vs. ALL DEFENDANTS.

74. The foregoing paragraphs are incorporated by reference as though set forth fully.

75. The Plaintiff brings this action pursuant to the Pennsylvania Wrongful Death Act, 42 Pa. Cons. Stat. Ann § 8301 and Pa. R.C. P. No. § 2202(a).

76. The decedent did not bring an action for personal injuries during his lifetime, and no other action for the death of the decedent has been commenced against the defendant.

77. As a direct and proximate result of the Defendants' aforesaid acts, the Defendants are liable and the Plaintiffs seek the following damages:

    a. the funeral expenses for the decedent;

    b. his companionship, comfort, guidance and services to his minor Son, Paul;

    c. the loss of the enjoyment of his life;

    d. expenses of administration related to decedent's injuries; and

    e. any/all other damages as are permissible for Plaintiffs to recover in a wrongful death action.

**WHEREFORE,** the Plaintiff demands judgment against these Defendants, jointly, severally, and individually in an amount to be determined by a jury after a trial by jury, compensatory damages, interest, costs, attorney fees and any/all other relief as this Court may deem appropriate, whether legal or equitable.

Respectfully submitted,

/s/ Noah Geary
Noah Geary, Esquire
Attorney for the Plaintiff
Suite 225
Washington Trust Building
Washington, PA 15301
(724) 222-3788

## VERIFICATION.

I, Louis Anthony Gallo, Administrator of the Estate of Anthony Gallo, hereby verify that the facts and statements made within are true and correct to the best of my knowledge, information and belief. I understand that false statements herein made are subject to the penalties of 18 Pa.C.S.A. Section 4904, relating to unsworn falsification to authorities.

<u>/s/ Louis Anthony Gallo, Administrator of the Estate of Anthony Gallo</u>
Louis Anthony Gallo, Administrator of the Estate of Anthony Gallo

September 29, 2019